CINDY McCUEN, Indiv. and as Mother and Next Best Friend of Jennifer McCuen, *et al.*, Minors, *et al.*, Plaintiffs-Appellees, v. PEORIA PARK DISTRICT, Defendant-Appellant.

Third District   No. 3—92—0229

Opinion filed June 3, 1993.—Rehearing denied July 13, 1993.

BARRY, J., concurring in part and dissenting in part.

David B. Collins, of Quinn, Johnston, Henderson & Pretorius, of Peoria (Charles D. Knell, of counsel), for appellant.

Janssen, Maher, Wertz & Miller, of Peoria (Mark E. Wertz, of counsel), for appellees.

JUSTICE SLATER delivered the opinion of the court:

Defendant Peoria Park District brings this appeal pursuant to Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)) for resolution of the following questions certified by the circuit court of Peoria County:

(1) "Is a local governmental entity immune from liability for negligent acts arising from a hayrack ride pulled by two mules which it operates on its own property under Ill. Rev. Stat., ch. 85, paragraph 3—106?" and

(2) "Is a local governmental entity immune from liability for negligent acts arising from a hayrack ride pulled by two mules which it operates on its property under Ill. Rev. Stat., ch. 85, paragraph 3—109?"

This case arises from an accident in defendant Peoria Park District's W.H. Sommer Park on July 4, 1989. According to the pleadings of record, on that date plaintiff Jennifer McCuen was celebrating her birthday with friends and participating in the park's "country birthday party" and mule-drawn hayrack ride. While defendant's employee was engaged in harnessing the mules, they suddenly bolted and ran off with the driverless hayrack, causing several riders to fall or jump off, injuring themselves. On July 2, 1990, the injured plaintiffs brought suit against the governmental entity alleging negligence and

willful and wanton misconduct. Defendant moved to dismiss the complaint. The trial court denied the motion with respect to the negligence counts and granted in part and denied in part the motion with respect to the willful/wanton counts. Defendant moved for Rule 308(a) certification, and that motion was granted with respect to the negligence counts.

The statutory bases for defendant's motion to dismiss plaintiffs' negligence claims are contained in the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (Ill. Rev. Stat. 1991, ch. 85, par. 1—101 *et seq.*).

Section 3—106 of the Act provides:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." Ill. Rev. Stat. 1991, ch. 85, par. 3—106.

Section 3—109 provides in pertinent part,

"(a) Neither a local public entity nor a public employee is liable to any person who participates in a hazardous recreational activity, including any person who assists the participant, or to any spectator who knew or reasonably should have known that the hazardous recreational activity created a substantial risk of injury to himself or herself and was voluntarily in the place of risk, or having the ability to do so failed to leave, for any damage or injury to property or persons arising out of that hazardous recreational activity.

(b) As used in this Section, 'hazardous recreational activity' means a recreational activity conducted on property of a local public entity which creates a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury to a participant or a spectator.

'Hazardous recreational activity' also means:

\* \* \*

(3) Animal racing, including equestrian competition, \*\*\* rodeo \*\*\*." Ill. Rev. Stat. 1991, ch. 85, pars. 3—109(a), (b).

It is well established that because the Act is in derogation of common law, it must be strictly construed against the local public entity. (*Kirnbauer v. Cook County Forest Preserve District* (1991), 215 Ill. App. 3d 1013, 576 N.E.2d 168.) With respect to the immunity granted

by section 3—106, the question is whether that section extends to the operation of a hayrack ride.

Plaintiffs do not dispute that the hayrack and mule team were "public property" and were being used in the park for recreational purposes. Instead, plaintiffs argue that their complaint is not grounded on "the existence of a condition" of the property. Plaintiffs' complaint charges that defendant's employee was negligent in his operation of the ride and handling of the mules. It does not allege that "property" was improperly maintained or defective. Plaintiffs assert that section 3—106 does not immunize the defendant from all negligent acts, but only from negligence from failure to maintain its property. We agree.

The primary rule of statutory construction is to ascertain the intent of the legislature. (*Annen v. Village of McNabb* (1990), 192 Ill. App. 3d 711, 548 N.E.2d 1383.) The best indicator of that intent is the language of the statute itself. (*Beghr Willowbrook Venture v. Village of Willowbrook* (1991), 217 Ill. App. 3d 614, 576 N.E.2d 853.) When the statute is clear and unambiguous, courts will give the language its plain and ordinary meaning and will not read exceptions into the statute. *Beghr Willowbrook Venture*, 217 Ill. App. 3d at 617, 576 N.E.2d at 855.

■ In our opinion, a plain reading of section 3—106 indicates that immunity is afforded only when liability is "based on the *existence of a condition*" of the property. That is, there is no liability for injuries caused by defective, unsafe or negligently maintained public property intended for recreational use absent willful and wanton conduct. Here, plaintiffs' complaint is not based on the existence of a condition of the hayrack or mules. Plaintiffs have not alleged that the property involved was defective, unsafe or negligently maintained. Plaintiffs simply allege that defendant's employee failed to use reasonable care in the operation of the ride and handling of the mules. If the legislature had intended to provide immunity for all acts of negligence which take place on recreational property, it could have done so. Instead, it limited immunity to instances where the liability is based on a condition of the recreational property itself. In order to grant immunity to the defendant, we would have to ignore the "condition of the property" language of section 3—106. This we cannot do.

Our decision is supported by the case law interpreting section 3—106. Nearly all of the cases in which immunity was granted under this section involved unsafe or defective conditions of the public property itself. (See, *e.g., Davis v. Chicago Housing Authority* (1990), 136 Ill. 2d 296, 555 N.E.2d 343 (charging negligent maintenance and opera-

tion of *playground*); *Annen v. Village of McNabb* (1990), 192 Ill. App. 3d 711, 548 N.E.2d 1383 (alleging failure to maintain *restroom* in park); *Jarvis v. Herrin City Park District* (1972), 6 Ill. App. 3d 516, 285 N.E.2d 564 (charging failure to maintain, inspect and repair *slide* in park).)

The only case which appears to apply section 3—106 in the absence of an allegation of liability based on a condition of public property is *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 565 N.E.2d 654. In *Burdinie*, plaintiff claimed damages for injuries allegedly resulting because the municipal defendant's employee, a swimming instructor at the public pool, negligently instructed plaintiff, a nonswimmer, to jump into the pool's shallow end. Plaintiff jumped, struck his head and was injured. Plaintiff's complaint contained no allegation of a faulty pool or recreational facility, only allegations of negligent conduct on the part of the public entity's employee.

The *Burdinie* court first addressed those sections of the Act which it found to be relevant to plaintiff's complaint. Concerning section 3—106, the court stated that "[s]ection 3—106 applies to situations where an unsafe condition exists on municipally controlled property intended for recreational use." (*Burdinie*, 139 Ill. 2d at 512, 565 N.E.2d at 660.) However, the court did not point to any unsafe condition which made section 3—106 applicable. In fact, the court noted that plaintiff's complaint did not allege an unsafe condition in or around the pool. Nevertheless, the court held that because plaintiff failed to allege willful and wanton conduct on the part of the municipal employee, his complaint failed to "state a cause of action under section 3—106." *Burdinie*, 139 Ill. 2d at 513.

In light of the *Burdinie* court's statement that section 3—106 applies to situations where an unsafe condition exists on recreational property, it appears that section 3—106 should have been found to be inapplicable in *Burdinie* since no unsafe condition was involved in that case. This inconsistency may be attributable to what appears to be some confusion in the *Burdinie* opinion concerning the difference between failing to state a cause of action and barring an action based on governmental immunity. At four different points, the *Burdinie* opinion states that plaintiff's complaint failed to "state a cause of action under [the Act]." However, it is well settled that the Act does not impose duties, but only confers immunities. (*Vessey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 583 N.E.2d 538; *Havens v. Harris Township* (1988), 175 Ill. App. 3d 768, 530 N.E.2d 284.) In

*Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 445, 410 N.E.2d 610, 612, the court stated:

> "The Tort Immunity Act is not a catalog of duties or a source of rights; it does not create new liabilities where none already exist. [Citation.] Thus, *we must look to other statutes and to the common law to determine whether the complaint states a cause of action.*" (Emphasis added.)

In light of the above authority, we fail to see how a complaint can "state a cause of action" under the Tort Immunity Act. In any event, we believe our decision here is supported by the majority of the case law and the general proposition enunciated by the *Burdinie* court that section 3—106 applies to situations where an unsafe condition exists on municipally controlled recreational property.

Accordingly, we hold that the answer to the first certified question is no—that is, a local governmental entity is not immune from liability under section 3—106 for negligent acts arising from a hayrack ride pulled by two mules which it operates on its own property.

With respect to the second certified question, we do not hesitate to agree with the trial court in its decision that the mule-drawn hayrack ride involved in this case is not the type of "hazardous recreational activity" for which a public entity is granted immunity under section 3—109 of the Act. The risks assumed by participants in animal racing, equestrian competition and rodeos, which the Act specifically enumerates among such activities (Ill. Rev. Stat. 1991, ch. 85, par. 3—109(b)(3)), cannot rationally be compared to the ride plaintiffs embarked upon in this case. Accordingly, we answer the second certified question in the negative, because we hold that section 3—109 of the Act has no applicability to the recreational activity involved in this case.

Having determined that defendant is not immune from liability for acts of negligence by virtue of section 3—106 or section 3—109 of the Act, we affirm the order of the circuit court of Peoria County denying defendant's motion to dismiss the negligence counts of plaintiff's complaint and remand this cause for further proceedings.

Affirmed and remanded.

McCUSKEY, P.J., concurs.

JUSTICE BARRY, dissenting in part and concurring in part:

In my opinion, my colleagues' technical reading of the immunity granted by section 3—106 cannot withstand analysis. While it is

true that most of the cases tested under section 3—106 involve unsafe or defective physical aspects of the public entity's property itself (see *e.g., Davis v. Chicago Housing Authority* (1990), 136 Ill. 2d 296, 555 N.E.2d 343 (charging negligent maintenance and operation of playground); *Jarvis v. Herrin City Park District* (1972), 6 Ill. App. 3d 516, 285 N.E.2d 564 (charging failure to maintain, inspect and repair slide in park)), governmental immunity has prevailed as well under section 3—106 where the injured plaintiff charged only negligent conduct by defendant's employee in the use of public property. *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 512, 565 N.E.2d 654, 660.

Contrary to my colleagues' assessment, I do not believe that our supreme court was confused, inconsistent or in error when it determined that the injured plaintiff in *Burdinie* was precluded from recovery against the municipal defendant by virtue of the immunity granted by section 3—106 of the Immunity Act. In *Burdinie*, plaintiff claimed damages for injuries allegedly resulting because the municipal defendant's employee, a swimming instructor at the public pool, negligently instructed plaintiff, a nonswimmer, to jump into the pool's shallow end, whereupon plaintiff jumped, struck his head and was injured. The court stated that section 3—106 "applies to situations where an unsafe condition exists on municipally controlled property intended for recreational use" and "contemplates liability only if the municipality or municipal employee acts in a 'willful and wanton' manner." (139 Ill. 2d at 512, 565 N.E.2d at 660.) Because plaintiff's complaint was framed in terms of negligence only, our supreme court ruled that it did not state a cause of action under section 3—106.

It is apparent to me that the *Burdinie* court correctly interpreted the term "condition" as alluded to in the statute to mean not only a defective, unsafe or negligently maintained aspect of public property, but an employee's negligent conduct or acts in connection with the use of such property as well. This interpretation is consistent with the *Burdinie* court's prefatory statement that "[t]here is no municipal liability *** for negligence resulting in injuries occurring on public property intended for recreational purposes, unless the local public entity is guilty of willful and wanton conduct (Ill. Rev. Stat. 1989, ch. 85, par. 3—106)." (139 Ill. 2d at 506-07, 565 N.E.2d at 658.) As in the case on appeal today, there was no allegation in *Burdinie* of a faulty pool or recreational facility, only allegations of negligent conduct on the part of the public entity's employee. It is my opinion that in rejecting plaintiff's negli-

gence counts pursuant to section 3—106, the *Burdinie* court left no doubt but that the term "condition" embraced the employee's negligent conduct, which created the situation making the injury possible on public recreational property, as well as the physical attributes of such property.

Further, my colleagues' narrow interpretation of "condition" violates the cardinal rule of statutory construction that force, effect and meaning should be given to the entire statute so as to render the statute a harmonious, consistent and symmetrical whole (82 C.J.S. *Statutes* §346 (1953)). By my view, the majority pits unsafe physical attributes of a public recreation area or facility caused by negligence (the first clause of section 3—106) against willful or wanton conduct of a public entity or employee (second clause) and illogically determines that a public employee's negligent conduct (presumably only to the extent that it does not physically affect the entity's property) is not subject to the immunity granted by the statute. I cannot believe that this result was contemplated by the legislature.

By contrast, applying a broader interpretation to the term (as was done in *Burdinie*) makes sense of the entire section. I would hold that the immunity afforded in the first clause includes negligent *conduct* in the creation of a "condition," and this conduct was intended by the legislature to be parallel to and contrasted with willful and wanton *conduct* in the creation of an unsafe condition in the second clause. Otherwise stated, a "condition" created by the negligence of a public recreational proprietor or its employee is not actionable by virtue of governmental immunity (first clause of section 3—106), but such immunity is not available if the "condition" is caused by "such local entity or public employee['s] *** willful or wanton conduct" (second clause). Ill. Rev. Stat. 1991, ch. 85, par. 3—106.

Finally, as I see it, my colleagues' holding defeats legislative goals of encouraging the development of parks and other recreational areas (*Beckus v. Chicago Board of Education* (1979), 78 Ill. App. 3d 558, 397 N.E.2d 178) and protecting local public entities and employees from negligence liability arising from the operation of such public facilities (Ill. Rev. Stat. 1991, ch. 85, par. 1—101.1). On June 30, 1986, during the House debates on article I of Senate Bill 1200, amending the Tort Immunity Act, Representative Greiman poignantly observed, "This Amendment puts kids back in the parks. It puts Saturday's heroes back in the high school football playing field. And yet, it makes sure that communities will still be

liable for wanton and willful conduct that disregards, with conscious indifference, the safety of its citizens." (84th Ill. Gen. Assem., House Proceedings, June 30, 1986 (House Conference Committee Report on Senate Bill 1200).) Senate President Rock similarly addressed practical concerns in explaining the purpose of the legislation: "[W]e set up a joint Senate committee between the Committees on Local Government and Insurance and asked them to go out and hold some hearings and find out, if they could, the extent of the problem with respect to the affordability and availability of liability insurance particularly as it related to local governments, because all of us were aware and somewhat appalled that counties and park districts and municipalities were confronted with the fact that·they were uninsurable or that the insurance that was offered to them was unaffordable. \*\*\* Article I is the Tort Immunity Act and the local governments and their representatives insofar as I know are pleased and well they should be, because their problem is addressed and responded to." (84th Ill. Gen. Assem., Senate Proceedings, at 78-80, June 30, 1986 (Senate First Conference Committee Report on Senate Bill 1200).) (Article 1 of Senate Bill 1200 was enacted into law as Public Act 84—1431, effective November 25, 1986.) Obviously, the "loophole" that the majority creates in the statute today will effectively destroy the protections that the local governments and the State legislators thought they had achieved for the benefit of local governments.

I would hold that the answer to the first certified question is yes—that is, a local governmental entity is immune from liability for negligent acts arising from a hayrack ride pulled by two mules which it operates on its own property under section 3—106. Ill. Rev. Stat. 1991, ch. 85, par. 3—106.

I agree with the majority's resolution of the second certified question.